Mary A. Lucas vs. Harvey M. Lucas — Appeal from Houston County.

The alleged commission of a theft or other crime furnishes no ground for an application for divorce, as being an outrage in the sense in which the word "outrages" is used in the 3d section of the act of 1841 "concerning divorce and alimony." The term, as used in the statute, has reference only to outrages to the person.

This was a suit for a divorce from the bonds of matrimony. The petition states the marriage of the parties on the 20th September, 1842; that in July, 1845, her husband became of an infamous and abandoned character, and perpetrated the crime of theft, petty instances of which are related, but no conviction of the offense is alleged. It further states that he, her husband, had fled to avoid legal punishment, and resided in the county of Shelby, and had abandoned her in a state of destitution, no longer recognizing or sustaining the relation he bore to her as her husband; that he still continued of an idle, dissolute and profligate character, pursuing no regular or honest calling, and making no provision for her. The petition further states that there is one child, a daughter, the offspring of the marriage, residing with petitioner. She prays for a divorce from the bonds of matrimony, and that the guardianship of her daughter be committed to her. Subpœna to answer was served on the defendant by the sheriff of Shelby county, but no answer was filed. From a bill of exceptions contained in the record [113] it appears that after the petition had been read to the jury, and plaintiff's counsel was proceeding to call witnesses to prove the facts alleged, the court withdrew the case from the jury and dismissed it, whereupon this appeal was taken.

*Taylor*, for appellant.

The case is within the provisions of the law of 1841, concerning divorce and alimony. See laws of Texas, vol. 5, p. 20, section 3. The law undoubtedly intends, and, in fact, does in express words make "any kind of outrage" or "ill treatment" which is "of such a nature as to render their living together

insupportable," a ground for divorce *a vinculo matrimonii;* and if the tissue of monstrous facts set forth in the petition, especially when viewed in reference to their bearing and effect upon the connubial relations and interests, be not " outrages " and " ill treatment " in the utmost extent and force of the terms; and if it is not " outrage " and " ill treatment " of such a nature, in the very language of the law, as to render their living together (if the woman be at all a person of virtuous and honorable character, which is always to be presumed) " altogether insupportable," then I am incapable of understanding either the words of the law or the things with which it deals.

Mr. Justice Lipscomb, after stating the facts, delivered the opinion of the court.

If the grounds set forth in the petition were sufficient to entitle the petitioner to a divorce, then there was error in arresting the progress of the case, and in dismissing it. If on the other hand the petition showed no sufficient grounds for such a divorce in favor of the complainant, it could have answered no beneficial purposes to have permitted its further progress, but would have been consuming the time of the court in an unimportant inquiry into the truth of alleged crimes, collaterally brought before the court, on the trial of a civil issue, which if proven to be true could not sustain the decree prayed for in the petition.

[114] The petition is attempted to be sustained by the 3d section of an act of the 5th congress of Texas, page 19. It is in the following words, i. e.: " That a divorce by separation from the bonds of matrimony may be decreed in the following cases, that is to say, where either the husband or wife is guilty of excesses, cruel treatment, or outrages towards the other, if such ill treatment is of such a nature as to render their being together insupportable." The counsel for the petitioner claims for the word *outrage* as used in the above recited section of the act, a construction that would embrace larceny or any other crime against law or sound morality.

If the construction contended for could be sanctioned by the

court, yet it might be questioned how far it would be reconcilable with sound policy, and the just administration of the criminal laws of the land, as well as the delicate relation of husband and wife. To permit an inquiry into the truth of the alleged larceny, in a collateral way, it might well be insisted that there should be a conviction of the offense charged, before it could be made the ground of divorce. We are, however, of the opinion that the word *outrage*, as found in the act of congress referred to, cannot bear the construction contended for by appellant's counsel. The whole of the section most clearly shows that an outrage to the person is the true meaning of the word. The husband may be a felon, and may have outraged laws of God and man, yet personally kind to his wife; tenderness for her may be one redeeming trait in his vicious character — one virtue linked with a thousand crimes. The wife should not be the first to spread upon the records of the country the charge of felony against the guilty yet the affectionate husband, and the father of her child. If he had erred, and committed crime, she should endeavor to win him back to virtue, and be the very last person on earth to proclaim his vices to the world.

The marriage bond is of too sound a nature to be rudely [115] torn asunder; it should only be dissolved on the clearest legal grounds.

The decree of the district court is in all things affirmed.